IN RE HESTER.

(No. 81AP-872—Decided April 13, 1982.)

Mr. *Michael Miller,* prosecuting attorney, and Mr. *Alan C. Travis,* for appellee.

Mr. *James Kura,* county public defender, and Ms. *Gloria Eyerly,* for appellant.

WHITESIDE, P.J. Defendant-appellant, Michael Hester, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, finding him to be a delinquent minor for having murdered a ten-year-old boy (defendant having been twelve years old at the time of the occurrence), which crime, if he had been an adult, would have constituted aggravated murder in violation of R.C. 2903.01.

Defendant-appellant raises three assignments of error which present three separate issues as follows: (1) whether the state is estopped from proceeding against defendant, or whether he has been denied the right to a speedy trial, because of an unsuccessful appeal by the state of an order of the trial court suppressing a statement which defendant made to the police; (2) whether defendant has been denied due process because the state failed to disclose to defense counsel, prior to trial, the existence of certain notes or summaries made by a police officer indicating the possibility that two persons were observed with the victim shortly after the probable time of the crime, or to disclose the substance of any oral statement either of these witnesses may have made to the police; and (3) whether there is sufficient evidence to permit a finding of defendant's guilt beyond a reasonable doubt.

Because he was only twelve years old, defendant could not be tried as an adult under existing rules. Nevertheless, defendant's rights are essentially similar to those of an adult charged with a similar crime. Accordingly, defendant had a right against self-incrimination, including the so-called *Miranda* rights. Defendant filed a motion to suppress an incriminating statement that he had made to the police, which motion the trial court sustained and ordered defendant's statement suppressed. The state appealed to this court, but its certification did not contain the express language required by Juv. R. 22(F) that "the granting of the motion has rendered proof available to the state so weak in its entirety that any reasonable possibility of proving the complaint's allegations has been destroyed." Because of such deficiency, defendant filed a motion to dismiss, and the state filed a motion to amend its certification. This court allowed the state to amend its certification,[1] and the appeal proceeded resulting in an affirmance of the judgment of the trial court. The state either failed to follow through with an amended certification, or for some reason such certification was not filed with the clerk of the trial court as it should have been. Nevertheless, in light of the history of the case, we must consider this case the same as if the state had made a proper certification in accordance with Juv. R. 22(F) and the same was in the record before us.

Defendant points out that the granting of a motion to suppress can constitute a final appealable order only if the state is "irretrievably foreclosed" from prosecution because of the motion to suppress. See *State* v. *Buckingham* (1980), 62 Ohio St. 2d 14 [16 O.O.3d 8]. Therefore, the purpose of Juv. R. 22(F) is to require the state to make a certification that the sustaining of the motion to suppress has rendered the state's case so weak that for

_____

[1] See *In re Hester* (1981), 1 Ohio App. 3d 24.

practical purposes it has been "irretrievably foreclosed" from prosecution, as well as a certification that the appeal is not taken for the purpose of delay. Defendant reasons that since the state lost its appeal upon the motion to suppress, it should be bound by its certification that the remaining evidence is "so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." Crim. R. 12(J). See *State* v. *Caltrider* (1975), 43 Ohio St. 2d 157 [72 O.O.2d 88].

Coupled with this argument, defendant contends to the effect that where the state loses its appeal from the sustaining of a motion to suppress, the time involved in maintaining the unsuccessful appeal should be considered undue delay in prosecuting the case. The import of defendant's argument is that the state's right to appeal from the sustaining of a motion to suppress, as well as the certification requirement of Juv. R. 22(F), is predicated upon an expectation that there will be no prosecution of the accused by the state in the event it does not prevail upon its appeal from the sustaining of the motion to suppress. The certification, as well as the foundation for the appeal, is that prosecution would be a vain act because the state has insufficient evidence for a conviction without utilizing the suppressed evidence. However, the state is not barred from prosecution following an unsuccessful appeal from the sustaining of a motion to suppress. There is no statutory or constitutional provision barring the state from such a prosecution. However, as pointed out in the second paragraph of the syllabus of *Caltrider, supra,* the purpose of allowing the state to appeal from the granting of a motion to suppress "is not the delay of an ultimate disposition." Thus, in those instances where the state elects to prosecute the accused upon the original charge or indictment following an unsuccessful appeal from the sustaining of a motion to suppress evidence, the threshold issue is whether or not the

state's certification pursuant to Juv. R. 22(F) [or Crim. R. 12(J)] was made in good faith. If such certification were not made in good faith, the time consumed in determining the appeal from the motion to suppress must be charged to the state as undue delay in the prosecution of the accused with respect to a determination of whether there has been a violation of the accused's constitutional right to a speedy trial.

The state's case against defendant is largely circumstantial. Initially, defendant made a confession to the police which was suppressed by order of the trial court which was affirmed on appeal. Without such confession, the state was left only with circumstantial evidence which, as defendant contends in support of his third assignment of error, is not strong. However, during the pendency of the appeal from the sustaining of the prior motion to suppress, defendant, while detained in the juvenile detention center, made statements indicating his guilt of the crime with which he is charged herein to three other juveniles also detained at the detention center. Its case having been strengthened by this new evidence, the state proceeded with the prosecution, resulting in the conviction.

There is nothing in the record to indicate that the state's certification made in connection with appealing the order suppressing defendant's confession was made other than in good faith. At the time the appeal was commenced, the state's case was weak. The fact that it was strengthened by statements made by defendant during the pendency of that appeal to fellow juveniles does not detract from the good faith evinced by the prosecutor's certification in connection with the prior appeal. Nor does the fact that the state may have learned of the new evidence prior to final disposition of the appeal change that certification from one made in good faith to one made in bad faith. There is no requirement that the state renew its certification required by

Juv. R. 22(F) at repeated times during the pendency of the appeal. Rather, this certification is to be made only once at the commencement of the appeal, at the time the notice of appeal is filed, and is a prerequisite to the appeal itself. There is no direct indication as to when the state learned of this new evidence, but, from contentions made by defendant, it appears that it was after the state filed its brief in the prior appeal and possibly after oral argument in the appeal. Accordingly, we find no lack of good faith on the part of the state with respect of its Juv. R. 22(F) certification or prosecution of its appeal from the order suppressing evidence. In this regard, we note that defendant had made no contention, and there is nothing in the record or in the decision of this court upon the prior appeal, indicating that that appeal was frivolous. The first assignment of error is not well taken.

Defendant's second assignment of error is predicated upon a claim that defendant was denied discovery of statements made to the police by two witnesses, Phillip Cunningham and Robert Hemley. During trial, defense counsel made a contention that the two boys were seen riding on a bicycle with the victim at about 7:45 p.m., the night of his death. No effort was made to call these two boys as witnesses even though their contended existence was ascertained on the first day of the three-day trial, and the trial court so suggested.

From the record it is clear that defense counsel had available the notes used by the police officer during his testimony as part of the state's case. Cross-examination of the officer indicated that he had obtained information concerning the two boys from the victim's mother. She had testified earlier during the state's case and indicated that, while looking for the victim on the evening of his disappearance, she observed defendant standing on a street corner and that he told her he had seen the victim riding his bicycle down Main Street. The victim's sister gave similar testimony, indicating that defendant told her he saw the victim riding his bicycle on Main Street with another boy. She also testified that earlier she had seen the victim with two other boys playing outside their home. Phillip Cunningham and Robert Hemley apparently were these two boys.

There is some indication that the police interviewed these boys, as was more fully explored by defense counsel when the police officer was recalled on cross-examination during the defendant's case. At that time, defense counsel attempted to proffer the police officer's case file containing information summaries of various witnesses with the reservation that the trial court not look at them. The trial court "refused" the proffer, noting it to be proper only if the evidence was offered and excluded by the trial court. Defense counsel neither offered the file into evidence nor made any motion in connection therewith except to request to have the evidence "sealed for a determination at a later time."

While the evidence is somewhat sketchy, it appears that the police did interview the two witnesses and made summaries of their testimonies. It does not appear that defense counsel was denied an opportunity to examine the summaries at trial but only that the trial court denied a proffer of an entire file into the record. No request was made to proffer only the summaries of the statements of these two persons. Assuming that the state improperly failed to furnish these summaries to defense counsel during discovery, the remedy, as provided by Juv. R. 24(C), is for the trial court to "grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." Here, defense counsel sought no order from the trial court, other than the "proffer" of the file containing the summaries. Nor has defendant availed himself of App. R. 9(B) or 9(E), assuming that something

has been excluded from the record on appeal.

There is nothing in the record before us to indicate that defendant's due process rights have been violated in any way. The two witnesses in question did not testify. If their testimony would have been beneficial to defendant, it was incumbent upon him to seek to have them testify and to seek a continuance for that purpose if necessary. He did neither. This court, therefore, can only assume that defense counsel at the time did not feel that the testimony of the two witnesses would have been beneficial to defendant's defense. There is nothing in the record to indicate otherwise. The second assignment of error is not well taken.

By the third assignment of error, defendant contends that the judgment of the trial court is against the manifest weight of the evidence. The case was tried to the court without a jury. There was circumstantial evidence including evidence that: (1) defendant was seen with the victim the evening of his death; (2) defendant was in the vicinity of the victim's home that evening and the next day and, on several occasions, inquired of the victim's mother and sister whether the victim had been found; (3) defendant finally told the victim's sister and later his mother that he, the defendant, knew where the victim was but that he was dead, after which defendant led them to the location where the victim had been killed; (4) defendant's fingerprints were found at the murder scene; (5) defendant and another person were seen with the victim in the general vicinity of where his body was found on the evening of his death; and (6) defendant later had possession of the victim's bicycle and exchanged parts with a friend.

There is no indication of anyone else being in the vicinity except one person named Steve Pool. There was considerable evidence concerning Pool and his having been questioned by police officers and offered immunity if he would make a statement. A written transcript and a tape recording of the interview of Pool by police officers were furnished defense counsel. Pool was not called as a witness by either party, and neither the summary nor tape recording of his police interview is in evidence. There is no indication that he made any statement to the police.

In addition to the circumstantial evidence, there is testimony of three juveniles that defendant admitted killing the victim while detained with the three juveniles at a detention center. One of the juveniles related defendant's admission as follows:

"He told us that him and a boy got into an argument. He didn't say with who and that the boy hit him in the face. So he said he picked up a club. He didn't say what sort, and he said he hit the boy once and the boy fell down, but he was still moving, so he hit him again. And he said when he left, that the boy was still alive, and that is all he told us."

Another of the juveniles related the admission as follows:

"* * * And I asked him and he said he was in here for killing somebody. And I asked him where it happened and he said in a garage over on 22nd and Mound. And I asked him why he did it and he said self-defense; he beat him with a pole that come off the side of the railing. He beat him until he was dead."

There was evidence that semen was found in the victim's mouth. Defendant produced testimony of an urologist indicating that defendant was incapable of producing semen. However, on cross-examination, the urologist equivocated indicating that his opinion was predicated in part upon a physical examination of defendant and in part upon what defendant told him. In addition, he restated his opinion stating, "I don't believe he was able to produce a specimen containing sperm." Furthermore, it is not necessary that defendant acted alone in the murder. As indicated above, there was some

evidence that Pool may have been present at the scene.

In the absence of defendant's admissions, there might be some question as to the sufficiency of the evidence. However, the circumstantial evidence coupled with defendant's admissions to the other juveniles, if that testimony be believed, is sufficient to permit a finding by the trier of the facts of guilt beyond a reasonable doubt. Accordingly, the third assignment of error is not well taken.

For the foregoing reasons, all three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.